# In the United States Court of Federal Claims

No. 20-879C
(Filed: November 16, 2020)
(Re-filed: December 30, 2020) [1]

* * * * * * * * * * * * * * * * * * *

MITCHCO INTERNATIONAL, INC.,

        *Plaintiff,*

v.

THE UNITED STATES,

        *Defendant,*

and

KENTUCKY OFFICE OF VOCATIONAL
REHABILITATION,

        *Intervenor,*

and

SOUTHERN FOODSERVICE
MANAGEMENT, INC.

        *Intervenor.*

Bid protest; post-award bid protest; FAR 15.308 (2018); FAR 9.105-2(a)(1) (2018); best value determination; price reasonableness; responsibility determination.

* * * * * * * * * * * * * * * * * * *

    *Alan Mark Grayson*, Windermere, FL, for plaintiff.

---

[1] This opinion was originally issued under seal in order to afford the parties an opportunity to propose redactions of protected material. The parties filed a joint notice on November 20, 2020, notifying the court that they have no proposed redactions for the opinion (ECF No. 54). We thus reissue this opinion unredacted.

*Richard Paul Schroeder*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Jeffrey Bossert Clark*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglass K. Mickle*, Assistant Director, and *Robert B. Neill*, *William L. Gery*, of counsel for defendant.

*Peter Andrew Nolan* and *Andrew J. Schumacher*, Austin, TX, for intervenor, Kentucky Office of Vocational Rehabilitation. *W. Brad English*, Huntsville, AL, for intervenor, Southern Foodservice Management, Inc.

*Jon D. Levin*, *Robert G. Jones*, and *Emily J. Chancey*, of counsel for intervenor, Southern Foodservice Management, Inc.

OPINION

BRUGGINK, *Judge*.

In this post-award bid protest, Mitchco International, Inc. ("Mitchco"), alleges that the United States Army ("Army") improperly awarded a contract to the Kentucky Office of Vocational Rehabilitation ("KOVR") to provide food and dining room operation services at Fort Knox, Kentucky. Plaintiff seeks a permanent injunction to prevent the Army from allowing performance under this solicitation by any contractor other than Mitchco and to direct the Army to terminate the contract issued to KOVR under this solicitation. The parties have filed cross-motions for judgment on the administrative record, which are fully briefed. Oral argument is unnecessary. Because the Army properly documented its award and its analysis was reasonable, we grant defendant's and intervenors' motions for judgment on the administrative record and deny plaintiff's motion.

BACKGROUND

I.    The Solicitation

The Army issued a small business set-aside solicitation to procure full food services at designated facilities at Fort Knox, intending to award a single, firm-fixed price, indefinite delivery, indefinite quantity contract to the responsible offeror who represented the best value to the government. The solicitation required management of dining facility functions including, "food receiving and storage, food preparation, food serving, remote site

2

feeding, grab n go (Pre-packaged Meals) and facility sanitation duties." Administrative Record ("AR") 472.  The Army planned to award a contract without discussions and reserved the right to award the contract to an offeror who was not the lowest priced offeror.  The solicitation called for a five-year ordering period, with a six-month extension option pursuant to Federal Acquisition Regulation ("FAR") 52.217-8.  AR 438, 473.

The Source Selection Evaluation Board ("SSEB") considered the following factors, listed in descending order of importance: Technical Capability (Sub-factors: Organizational Structure and Staffing plan), Past Performance, and Price.  Technical Capability and Past Performance Factors were rated either Unacceptable or Technically Acceptable.  Price was not scored or rated.   Offered prices were evaluated for fairness and reasonableness and to assess whether the prices were balanced pursuant to FAR 15.404-1.   To be eligible for award, an offeror had to be rated Technically Acceptable overall.

The solicitation stated that it was subject to the Randolph-Sheppard Act ("R-SA"), 20 U.S.C. § 107, which gives priority to State Licensing Agencies ("SLA") for the award of food service contracts that are intended to be performed by blind persons.  This meant that, if a "SLA is determined to be in the Competitive Range, then the SLA will be afforded the priority delineated in the R-SA."  AR 351, 465.  Further, a contract governed by the R-SA gives priority to blind persons licensed by a state agency for opportunities involving the operation of vending facilities on Federal property.  20 U.S.C. § 107(b).

The solicitation's subcontracting plan requirement did not apply to a "100% small business set-aside," meaning that small business concerns were not required to submit a subcontracting plan for this solicitation.  AR 755.  Thus, the solicitation only required the SLA to submit subcontracting plans.  On April 10, 2020, the Department of Education ("DOE") confirmed that KOVR had been the designated SLA for the Commonwealth of Kentucky ("Kentucky") since October 18, 2018.  The R-SA authorizes the SLA to license and select vendors for the contract.  Thus, KOVR was authorized to act both as offeror and contract holder for the Fort Knox contract.  AR 1041.  KOVR selected Ms. Fay Autry as the Licensed Blind Vendor ("LBV"), giving her the role of management of operations on the contract and responsibility of ensuring contract compliance.

II.     The Evaluation and Award

    The Army received five proposals.  The SSEB determined that three
were eligible for award: KOVR, Mitchco, and Prosperitus.  The SSEB rated
each of these proposals as Technically Acceptable, and thus all three were
included in the competitive range.

    In a letter dated January 6, 2020, the Army notified Mitchco that
although Mitchco and KOVR were both in the competitive range, KOVR
would receive priority over Mitchco under the R-SA because KOVR is the
designated SLA.  The Army also noted that if the "Government and KOVR
SLA reach an impasse, then the successful offer within the competitive range
will be selected . . . ." AR 1848-49.  The Army gave Mitchco the opportunity
for debriefing in accordance with FAR 15.505, which Mitchco requested on
January 7, 2020.

    Before the debriefing took place, Mitchco filed an agency-level
protest with the Army, which was dismissed on February 6, 2020.  The Army
then provided the post-award debriefing to Mitchco on February 10, 2020,
detailing the three factors considered by the SSEB, its evaluation of Mitchco,
and the R-SA requirements which give priority to the SLA, KOVR, because
the SLA was within the competitive range.  On February 12, 2020, Mitchco
submitted follow-up questions to the Army, "which the Army deemed to be
additional questions related to the debriefing, as defined in the enhanced
debriefing provisions of section 818 of the National Defense Authorization
Act for Fiscal Year 2018."  AR 3628.

    On February 13, 2020, Mitchco filed a small business size protest with
the Army, challenging the award to KOVR.  Mitchco requested that the
February 13, 2020 protest be forwarded to the United States Small Business
Association ("SBA") for its consideration.  On March 13, 2020, SBA issued
its determination that KOVR is other than a small business for the "subject
procurement under the size standard listed above," but did not issue a
determination on whether KOVR is considered an SLA because the SBA
"does not have the purview to determine if KOVR meets the exception under
the SLA for award."  AR 3533-37.

On February 17, 2020, before the Army responded to Mitchco's follow-up debriefing questions, Mitchco submitted a protest to the U.S. Government Accountability Office ("GAO").  On February 21, 2020, the Army requested that GAO dismiss the protest as premature because the debriefing between the Army and Mitchco was ongoing, which the GAO did on February 28, 2020.  On March 4, 2020, the Army concluded Mitchco's enhanced debriefing by responding in writing to its questions.  Plaintiff then filed another protest at GAO on March 5, 2020.  GAO denied Mitchco's second protest on the merits on June 9, 2020.  Mitchco Int'l, Inc., B-418481.3, 2020 WL 4039018 (Comp. Gen. June 9, 2020).  First, GAO dismissed as untimely Mitchco's protest that the Army conducted improper discussions solely with "the awardee, a state licensing agency (SLA), in a procurement conducted pursuant to the Randolph-Sheppard Act . . . where this possibility was apparent from the solicitation, and the protester failed to challenge the terms of the solicitation before award."  *Id.* at 1. GAO denied the balance of Mitchco's protest, that KOVR violated the Procurement Integrity Act ("PIA"), 41 U.S.C. § 423, "as legally and factually insufficient where the protester's allegations, even if unrebutted, fail to establish a violation of law by the agency."  *Id*.

The Army began discussions regarding items for negotiation with KOVR on February 3, 2020, and then awarded the contract to KOVR on February 10, 2020, having determined that KOVR "is responsible within the definition of FAR 9.104-Standards" and thus eligible and qualified to receive the award.  AR 2136-37.  KOVR's proposal selected Southern Foodservice Management, Inc. ("Southern") as teaming-partner on the project, stating that Southern would "provide all corporate business resources and operational support needed to ensure professional management and operation of Fort Knox Full Food Services requirement as described in the solicitation's performance work statement . . . ."  AR 1041.

III.   Procedural History

In addition to these initial protests, Mitchco filed a complaint seeking a restraining order, a temporary and permanent injunction, a declaration of rights, and money damages in Franklin Circuit Court, Kentucky on November 18, 2019.  AR 3564.  Mitchco's complaint alleged that Kentucky breached a contract it made with Mitchco in 1999, awarding Mitchco the right to provide management and staffing for cafeteria and related food

services at Fort Knox.  Mitchco made the remarkable assertion that this is a contract, in effect, in perpetuity, having no expiration date and thus should remain intact if Kentucky continues to serve as "the prime on the Fort Knox dining facility contract."   AR 3158.   Mitchco also made allegations, mirroring its earlier protests, that Kentucky committed a PIA violation.[2] Mitchco alleged that Kentucky violated the Kentucky Model Procurement Code by "allowing the wrong State Cabinet to select the new contractor and by selecting Southern without full and open competition." AR 3159. Lastly, Mitchco alleged that its "due process rights had been violated, and that its property interest had been taken without just compensation." *Id.* Mitchco sought a permanent injunction requiring Kentucky to "engage Mitchco and no one else in the performance of the food service contract requirement at Fort Knox." *Id.* It sought $100,000,000.00 in damages.

On March 31, 2020, the Franklin Circuit Court issued a permanent injunction preventing KOVR from replacing Mitchco with Southern on the 2015 contract.  AR 3578-79.  The court found that Kentucky violated the Kentucky Model Procurement Code.  AR 3578.  On April 1, 2020, Kentucky filed an Emergency Motion for Clarification to determine if the permanent injunction applied only to the current contract, or if it would apply to future contracts, specifically, the new contract award under this solicitation.  AR 3581-87.  The court entered an order on April 2, 2020, in which it clarified that the prior ruling regarding the permanent injunction prevents Kentucky from replacing Mitchco with Southern as its teaming partner.  AR 3589. Thus, although KOVR intended for Southern to be its teaming-partner on the contract, as it stands, Mitchco is KOVR's teaming-partner pursuant to the state court's injunction.

On March 23, 2020, Southern filed a complaint in Federal District Court, Western District of Kentucky, Louisville Division seeking a declaratory judgment, arguing that state courts have no jurisdiction to manage a federal government contract and seeking a "judgment declaring the parties' respective rights and obligations with respect to the bridge Contract." AR 3160.  That suit is ongoing.

Mitchco filed its complaint in this court on July 17, 2020.  The protest here repeats Mitchco's earlier allegations that the Army improperly awarded a contract to KOVR to provide food and dining room operation services at Fort Knox.  Plaintiff also seeks an order terminating KOVR's contract and

---

[2] A recitation of these allegations is stated below.

restraining the Army from allowing any contractor other than Mitchco to perform the contract. Mitchco did not seek a preliminary injunction because Mitchco is currently serving as subcontractor on this contract. KOVR, as the awardee, sought and was granted intervention as of right. The putative awardee's post-award bid protest subcontractor, Southern, the entity that would perform the work on site, sought to intervene of its own right under Rule 24(b)(2), permissive intervention. We granted its motion. *Mitchco International, Inc. v. United States*, No. 20-879 (Fed. Cl. Aug. 17, 2020) (order granting motion to intervene).

## DISCUSSION

I.      Jurisdiction

We have jurisdiction over challenges to agency actions in connection with a federal procurement. *See* 28 U.S.C. § 1491(b) (2012). Our review is deferential in accordance with the standard set forth in the Administrative Procedures Act, 5 U.S.C. § 706, which is to say that we review agency action in a procurement for illegality and a lack of rationality. *Impressa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001). So long as the agency's decision was not irrational or otherwise illegal, we will leave it undisturbed.

In order to avail itself of this review, however, a protestor must show that it is an economically interested party, which, in the post-award context, means that it had a substantial chance of award but for the alleged error(s) of the agency. *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996). The protestor need not show that it was next in line for award, however, to establish standing, only that there would have been a reasonable likelihood of it being awarded the contract. *Id.* at 1563. If it cannot make such a showing, then it was not prejudiced by the asserted error and jurisdiction will not attach. Even if the disappointed bidder establishes standing, however, it must also go on to show that the error alleged was prejudicial, meaning that not only did an error take place, but that error affected the outcome of the agency's decision. *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1380-81 (Fed. Cir. 2009) (holding that the agency's acceptance of bid revisions by email did not prejudice protestor because it had no bearing on the agency's review of final proposals).

Here, we find that plaintiff has established standing.  Plaintiff alleges that KOVR is receiving an award that should have gone to Mitchco.  Plaintiff argues that, if KOVR's proposal had been evaluated in accordance with the governing rules, KOVR would not be eligible for award; and it argues that KOVR received preferential treatment when the agency allowed KOVR to submit proposal revisions but did not do so with Mitchco.  We also know that the agency's solicitation gave a preference under the R-SA to a designated SLA within the competitive range.  We thus conclude that, had KOVR been incorrectly evaluated as an SLA, a different outcome is reasonably likely.  Put another way, as both this court and the Federal Circuit have articulated the test, when the protestor shows that it is "'within the active zone of consideration'" by the agency, it has established standing. *Advanced Mgmt. Strategies Group, Inc. v. United States*, 139 Fed. Cl. 404, 411 (2018) (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).  We will consider below the separate question of prejudice as it pertains to the merits.

## II.    Injunctive Relief

Standing established, we move to the merits of plaintiff's request for a permanent injunction.  A party seeking the extraordinary remedy of an injunction "bears the burden of proving entitlement to relief, central to which are success on the merits and irreparable harm." *Red River Serv. Corp. v. United States*, 60 Fed. Cl. 532, 541 (2004) (citing *Sofamor Danek*, 74 F.3d 1216 at 1219 (Fed. Cir. 1996); *see also C.A.C.I., Inc.-Federal v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983) (injunctive relief is an extraordinary remedy).  When considering whether to grant a permanent injunction, the court must consider whether "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).  Although an award of injunctive relief is based on consideration of this four-factor test, failure to achieve success on the merits is dispositive. *See Career Training Concepts, Inc. v. United States*, 83 Fed. Cl. 215, 219 (2008) ("[A] permanent injunction requires actual success on the merits.").  As a basic proposition, the decision lies in

the sound discretion of the trial judge.  *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

A.    Success on the Merits

We conclude below that plaintiff has failed to establish irreparable harm, but we also find that plaintiff has not succeeded on the merits.  Mitchco advances six arguments supporting its contention that the Army committed prejudicial violations of procurement law: that the Army violated 13 C.F.R. § 121.1009(g)(2)(i) by refusing to terminate KOVR's contract after Mitchco filed a small-business size protest and KOVR failed to appeal that protest decision; that KOVR is not qualified to be an SLA; that the Army's selection of KOVR's R-SA proposal for the solicitation violated the Department of Defense ("DOD")-DOE Joint Statement of Policy; that KOVR and Southern have violated the PIA; that the Army violated FAR 15.306 and 15.307 by conducting discussions with and allowing proposal revisions from the awardee but not from Mitchco; and that the Army failed to evaluate the awardee's proposal in accordance with the terms of the solicitation and applicable law.  None of these have any merit.

1.    Mitchco's Small Business Protest

Mitchco argues that the outcome of its size protest with the SBA, which determined that KOVR is not a small business concern, required the Army to cancel its award to KOVR because KOVR failed to appeal the SBA's determination.  Plaintiff cites 13 C.F.R. § 121.1009(g)(2)(i), which states: "(2) A contracting officer ("CO") shall not award a contract to a protested *concern* that the Area Office has determined is not an eligible small business for the procurement in question. (i) If a CO receives such a determination after contract award, and no OHA appeal has been filed, the CO shall terminate the award."  *Id.* (emphasis added).  Mitchco argues that, because KOVR failed to appeal the SBA decision, the Army was required to terminate KOVR's contract because it was not eligible to receive an award set aside for a small business. [3]

---

[3] Mitchco's motion mistakenly asserts that the SBA also determined that KOVR is not an SLA.  In fact, the SBA clearly stated that "The Area Office does not have the purview to determine if KOVR meets the exception under the SLA for award."  AR  3537.

The government argues that Mitchco incorrectly applies this section to KOVR because it only applies to business concerns and KOVR is not a business concern of any size, large or small.[4]  This is correct.  The SBA regulatory framework only requires termination if the awardee is a business concern.  KOVR was awarded the contract as an SLA and not as a business concern, which KOVR does not dispute.  Thus, as an SLA, KOVR was not required to be considered a small business concern to be awarded the contract.  The solicitation stated that "all offerors are hereby notified that the R-SA applies to this solicitation, therefore, priority will be given to the State Licensing Agency (SLA) pursuant to R-SA."  AR 747.  Mitchco's SBA challenge was thus pointless, and the Army did not violate 13 C.F.R. § 121.1009(g)(2)(i) when it failed to terminate KOVR's contract after receiving the SBA's determination.

### 2.  KOVR is Qualified to be an SLA

Mitchco alleges that KOVR misrepresented itself as an SLA because neither Kentucky nor the federal government properly designated KOVR as the SLA for the state.  Once again, this argument has no merit.

### a.  KOVR is the SLA for Kentucky

Mitchco cites 782 Ky. Admin. Reg. 1:010(1)(11), which states that the Kentucky Office for the Blind ("KOB") "is the state licensing agency for the Randolph Sheppard Vending Facility Program in Kentucky."  Mitchco further points to the fact that KOB appeared as the designated SLA in a DOE publication, in this court,[5] in the Federal Register, and in contracts with R-SA requirements.

The government acknowledges that KOB was previously designated as the SLA for the state but points out that all of the instances referenced by plaintiff were prior to a 2018-2019 reorganization of the Blind Vendor

---

[4] Plaintiff's reply still contends that KOVR was required to appeal the SBA decision to avoid contract termination without providing any reasonable basis for its position.

[5] Plaintiff cites to *Commonwealth of Kentucky, Education Cabinet, Department for the Blind v. United States*, 62 Fed. Cl. 445, 448 (2004).

Program in Kentucky.  AR 2058-60.  Defendant cites a 2018 executive order issued by the Governor of Kentucky reorganizing the relevant state offices and divisions responsible for the Blind Vendor Program, resulting in KOVR becoming the SLA for Kentucky.  Ky. Exec. Order 18-779 (Sept. 21, 2018); AR 2058-60.  This reorganization was then codified in 2019 by the Kentucky legislature.  KY ST § 12.020 (2019).  This was in turn confirmed by the DOE in a letter on April 10, 2020, recognizing that the Kentucky Office of Vocational Rehabilitation now served as "the designated SLA for the State of Kentucky" since October 18, 2018.  AR 3604, 3629 n.2.  All of these changes took place prior to the solicitation and award.[6]

Mitchco replies that a state governor's executive order is not a legally sufficient means of designating an SLA under the R-SA.  To support this assertion, Mitchco cites to 20 U.S.C. § 107b and 34 C.F.R. § 395, arguing that the executive order does not satisfy the requirements for SLA approval in these code sections, which includes approval from the chief executive of the state and submission of an application letter to the U.S. Secretary of Education.  Mitchco further argues that the language of the executive order fails to transfer SLA status to KOVR.  The relevant language Mitchco cites from the executive order is as follows: "The Division of Kentucky Business Enterprise ('KBE') will be established and will continue to oversee the Blind Vendor Program as stipulated in the Randolph-Sheppard Act."  AR. 2063.  Based on this language, Mitchco argues that KBE is not interchangeable with KOVR, and that KBE's oversight role is not the same as being the state licensing agency.

Mitchco also argues that the CO acted improperly by sending an email to DOE requesting the agency to confirm that KOVR is the SLA for Kentucky.  Mitchco alleges that this email amounts to a request to backdate the determination to a date before the solicitation was issued, which Mitchco asserts constitutes a violation of FAR 3.101-1, requiring agency contracting

---

[6] Plaintiff's reply to the government's argument is that the statute enacted in 2012, 782 Ky. Admin. Reg. 1:010(1)(11), is controlling, even over the 2018-2019 reorganization and subsequent 2019 statute which placed the Division of Blind Services under KOVR.  The government correctly points out that Mitchco's reply fails to recognize that where a regulation conflicts with a statute subsequently enacted, the regulation becomes invalid.  *See Ruby Const. Co., Inc. v. Dep't of Revenue*, 578 S.W.2d 248, 254 (Ky. App. 1978) (finding a regulation to be invalid because it conflicted with an enacted statute).

officials to act impartially and above reproach.  All of this is to say that Mitchco disagrees with the Army's conclusion that KOVR was the duly licensed state Kentucky state agency for R-SA contracts.

Mitchco's arguments against the legal sufficiency of the 2018 executive order are made moot by the Kentucky legislature's 2019 codification of the 2018 executive order, and Mitchco's arguments to the contrary are frivolous.  In addition, its *ad hominum* attack on agency officials is specious and troubling.  The government correctly points out that the contracting officer's inquiry was routine and that his request that "the written verification be retroactive" to the date of the executive order does not constitute a request to backdate.  *See* AR 3608.[7]  We also agree with defendant's characterization of Mitchco's allegations,[8] and that Mitchco is grasping at straws in making a groundless allegation.  Government officials are presumed to act in good faith.  *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1288 (Fed. Cir. 2010).  To overcome the presumption of good faith, "the proof must be almost irrefragable," which "amounts to clear and convincing evidence." *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (quotations and citations omitted). "Innuendo, suspicion, conjecture, or counsel's argument are not sufficient." *Proxtronics Dosimetry, LLC v. United States*, 128 Fed. Cl. 656, 682 (2016) (citations omitted).

---

[7] Mitchco's allegation that DOE and the CO acted in bad faith is totally devoid of support in the administrative record, much less does it meet the required burden of proof of clear and convincing evidence.  The email was a request that DOE provide documentation confirming KOVR's SLA status that dated back to when the executive order effectively transferred the SLA status to KOVR.  AR 3608.  The email request did not include any language asking the DOE officer to "backdate" or change the determination to a date prior to the solicitation.

[8] The government contends that Mitchco's allegations were full of inflammatory accusations that the CO and DOE acted in bad faith.  It explains that the CO made the statement in an email which included four other government employees; thus, the CO was not attempting to hide this communication.  *See* AR 3608-09.  Additionally, the government reasonably points out that Mitchco's allegations do not even try to explain a motive for wrongdoing on the part of the CO.

b.  KOVR is properly considered the SLA by DOE

Mitchco also contends that KOVR does not meet the requirements for an SLA set out in 34 C.F.R. §§ 395.2 to .5. and 20 U.S.C. § 107b, including approval from the chief executive of the state and submission of an application letter to the U.S. Secretary of Education.

In response, the government cites the April 5, 2020 letter from DOE advising the CO that, while in the past it required "specific letters redesignating State agencies" as the SLA, that "it has not been the Department's practice for the past several years."  AR 3604.  As DOE explained to the CO, the regulations implementing section 107a(a)(5) of the R-SA "provide that the SLA in its application to be a designated agency assures that it will 'submit promptly to the Secretary for approval a description of any changes in the legal authority of the [s]tate licensing agency, its rules and regulations, blind vendor agreements, schedules for the setting aside of funds, contractual arrangements for the furnishing of services by a nominee, arrangements for carrying general liability and product liability insurance, and any other matters which form a part of the application.'"  AR 3604 (citing 34 CFR 395.3(a)(11)(iii)).  DOE further advised the CO that:

> Kentucky fulfilled its obligation to "submit promptly to the Secretary for approval a description of any changes in the legal authority of the State licensing agency' when it provided RSA with Governor Matthew Bevin's Executive Order issued on September 21, 2018, which reorganized Kentucky's Education and Workforce Development Cabinet and combined what had been separate agencies for the blind and for vocational rehabilitation into a combined agency that provided vocational rehabilitation services and services for the blind. RSA approved the change in the State agency that provides vocational rehabilitation services and services for the blind by issuing on October 18, 2018 the Grant Award Notification for Kentucky's FY2019 VR formula grant award to the Kentucky Office of Vocational Rehabilitation, thereby also approving the redesignation of the Kentucky State Licensing Agency to the Kentucky Office of Vocational Rehabilitation. RSA has

13

continued to validate that designation by treating the Kentucky Office of Vocational Rehabilitation as the SLA for Kentucky through its various interactions with the State. RSA can confirm that, since October 18, 2018, the designated SLA for the State of Kentucky has been the Kentucky Office of Vocational Rehabilitation.

AR 3604.

Mitchco's only response to the government's explanation in its cross-motion is to question the authority of the DOE official who sent the designation confirmation letter. As the email makes clear, the officer submitted the designation letter according to the advice of DOE's General Counsel and on behalf of DOE. This was no rogue actor, and counsel's allegations to the contrary are baseless. The record provides ample support for the CO's decision to treat KOVR as an SLA. It was lawfully considered such by both the government of Kentucky and DOE. Mitchco's challenge to the DOE letter confirming KOVR's SLA status is thus rejected.[9]

### 3.  DOD-DOE Joint Statement of Policy

Mitchco argues that KOVR violated Section 848 of the National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-63, and the resulting Joint Statement of Policy, 81 Fed. Reg. 36506 (June 7, 2016) (proposed rule), which Mitchco argues requires SLA offerors to "assign at least one blind person per military dining facility in a management role." AR 2390. Mitchco contends that KOVR's proposal does not meet this

---

[9] In its response to the government's motion for judgment on the administrative record, Mitchco even concedes that the 2019 legislation, 2019 Ky. Acts ch. 146, § 1, implemented the 2018 proposed reorganization, effective on June 26, 2019. Despite conceding this point, Mitchco still contends that an earlier version of statute 782 Ky. Admin. Reg. 1:010(1)(11), which identified Kentucky Office for the Blind as the SLA controls. However, it appears that the version of the statute upon which Mitchco relies was effective in 2012, AR 2499-2514, and was since amended multiple times. In fact, the version that Mitchco cites is not even the most recent version before the 2019 amendments identifying KOVR as the SLA. *See, e.g.,* KY ST § 12.020 (2018).

requirement.  Mitchco concedes that KOVR's proposal identified Fay Autry as a LBV, but Mitchco argues that because this solicitation includes multiple facilities the Joint Statement of Policy requires the SLA's proposal to assign one blind employee per facility.

KOVR contends that Mitchco is misguided in its reliance on the Joint Statement of Policy because it is precisely what the title suggests, a policy statement without binding legal effect.   KOVR points to a 2007 memorandum from DOD stating that the Joint Statement of Policy "should not be cited in individual solicitations until it is implemented in complementary regulations" by DOE and DOD.  Memorandum from the Dep't of Def. on applicability of the R-SA to military dining facilities, Shay D. Assad, Dir. of Def. Procurement and Acquisition Pol'y, to Dirs. of Def. Agencies (March 16, 2007). [10]  KOVR also cites to a DOD rule published in the Spring of 2019 that withdrew the pending regulation (81 Fed. Reg. 36506) without taking further action after DOE notified DOD that the 2006 Joint Policy Statement "no longer reflects the position of the DOE." Department of Defense, *Food Services for Dining Facilities on Military Installations RIN: 0750-A178*, REGINFO.GOV (Spring 2019), https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201904&RI N=0750-AI78.

KOVR also argues that the interests sought to be protected by the R-SA are enlargement of "the economic opportunities of the blind and stimulating the blind to greater efforts in striving to make themselves self-supporting . . . ." 20 U.S.C. § 107(a).  Thus, the R-SA's purpose is to provide opportunities, not specifically hourly jobs for blind individuals.  KOVR argues that its proposal satisfied the R-SA by identifying Fay Autry as the LBV and Contract Manager, as she would be receiving profits and entrepreneurial opportunities by managing the operation, and no additional blind employees had to be identified.

We agree.  In the absence of any specific legal requirement that blind persons had to be engaged at all locations, it was not unreasonable for the Army to find that KOVR satisfied the more general R-SA requirements, which aim to "provide blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind

---

[10]   The memorandum is publicly available at: https://www.acq.osd.mil/dpap/cpic/cp/docs/DPAP%20Memo-Military%20Dining%20Policy%20(Mar%202007).pdf.

to greater efforts in striving to make themselves self-supporting . . . "  20 U.S.C. § 107(a).  The Army's selection of KOVR's R-SA proposal for the solicitation was not a violation of law.

>    4.  Mitchco argues that KOVR and Southern have committed PIA violations

Mitchco alleges that KOVR and Southern have committed PIA violations.  Mitchco initially reported these allegations to the CO on Nov. 13, 2019, and then reported additional alleged violations shortly before filing its initial GAO protest.  Plaintiff urges that the CO's failure to take remedial action in response was irrational and contrary to FAR 3.104-7.

Mitchco's Nov. 13, 2019 letter to the CO alleged that two Southern employees attended a site visit and returned to the worksite the day after the visit without invitation, demanding proprietary information from Mitchco's employees.  Mitchco reported additional allegations of PIA violations against Southern to the Army on Feb. 13, 2020, to wit, that KOVR received Mitchco's proprietary documents and then turned these documents over to Southern.

Plaintiff claims that Southern's site visits and its questioning of Mitchco's staff about allegedly proprietary information gave it an unfair advantage over other offerors in violation of the PIA, which prohibits competing contractors from knowingly obtaining other offeror's bid information or source selection information about a procurement.  41 U.S.C. § 2102 (a)(1)-(2).  Mitchco thus concludes that the CO's failure to address these allegations and his denial of Mitchco's PIA protests were arbitrary, capricious, and contrary to law.

In response, both the government and KOVR point out that the only "person" who can violate the PIA with respect to procurement information is a present or former official of the Federal Government or an advisor to the Federal Government with respect to a Federal agency procurement. 41 U.S.C. § 2102 (a)(3) (defining "person" as it pertains to application of the PIA).  Thus, the government avers that this claim should be dismissed for lack of jurisdiction, as this court has jurisdiction over claims under 28 U.S.C. § 1491(a), which gives this court "jurisdiction to render judgment upon any

claim against the United States," not against non-federal entities, and Mitchco's PIA claim is alleged against non-federal entities.[11]

We agree.  PIA violation claims can only be properly brought against present or former officials of the Federal Government or an advisor to the Federal Government with respect to a Federal agency procurement. 41 U.S.C. § 2102 (a)(3).  We find that this claim is not properly brought under 28 U.S.C. § 1491(a).  Thus, this claim is dismissed for lack of jurisdiction.

Regarding the allegations against Southern, KOVR also notes that Mitchco fails to allege that Southern disclosed any contractor bid or proposal information to KOVR.  Further, Southern and the government explain that the information Southern received related to the incumbent contract and not the pending solicitation contract and none of the information shared was "source selection" or "contractor bid or proposal" information.  Further, KOVR argues that it could not have violated subsection (b) of the PIA because the documents identified by Mitchco are all documents that KOVR was authorized to possess as the prime contractor for the incumbent contract, which Mitchco was performing under merely as the teaming partner and subcontractor.  KOVR cites 41 U.S.C. § 2107(1)-(2), which provides a safe harbor covering the receipt of information by persons authorized to receive that information and a contractor disclosure of its own bid or proposal information.  Because the PIA was not violated, it argues, the CO lawfully and rationally ignored the allegations of misconduct brought by Mitchco.

We find a total lack of prejudice with respect to these allegations. Even if KOVR and Southern acquired Mitchco's propriety staffing information, it would have made no difference, both because plaintiff has not shown that this information was bid proposal information or that it was somehow useful in KOVR's success in capturing the award.  KOVR had preference for award from the Army due to its standing as an SLA under the

---

[11] In its reply, plaintiff does not answer the jurisdictional issues raised by defendant, but instead makes a bald assertion that it is not wrong to direct a PIA violation at a non-federal entity and then restates its position that the CO violated FAR 3.104-7 by failing to investigate intervenors' alleged PIA violations.

R-SA.  Like virtually all of plaintiff's allegations, these assertions of PIA violations are a groundless distraction.

### 5.  KOVR's Discussions with the Army and Proposal Revisions

Mitchco alleges that KOVR received preferential treatment in the proposal revision process.  Mitchco states that, although the Army found that both KOVR and Mitchco were within the competitive range, the Army only conducted discussions with and accepted proposal revisions from KOVR and not from Mitchco.   Mitchco alleges that this treatment violated FAR 15.306(c) & (d), and FAR 15.307(b).

KOVR and the government respond that this argument is baseless insofar as it is directed at the Army's application of the R-SA's priority to KOVR.  KOVR argues that the FAR allows the Army to directly negotiate with KOVR for dining facilities contracts without resort to a competitive procurement.  *See* 34 C.F.R. §§ 395.33(a), (d).  Thus, once an SLA was identified as within the competitive range, the Army was within its rights to negotiate only with it.   Defendant adds that, although the solicitation expressly notified offerors that the Army would apply the R-SA priority to KOVR, Mitchco did not file a pre-offer protest, thus, waiving its challenge under *Blue & Gold, Fleet, L.P. v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007).  We agree.  Although the solicitation was clear about the R-SA's application giving priority to an SLA and thus allowing the agency to negotiate only with the KOVR, Mitchco did not challenge that aspect of the solicitation in a pre-award protest, but instead decided to wait to raise the issue post-award.  Thus, Mitchco waived its opportunity to assert this protest allegation.

### 6.  KOVR's Proposal Was Technically Acceptable

Lastly, Mitchco alleges that KOVR's proposal was not Technically Acceptable.   Mitchco claims that KOVR's proposed subcontractor, Southern, intended to utilize its staff not only to cook, but to clean toilets. Mitchco argues that Southern intends to ignore service occupation limitations in the applicable collective bargaining agreement.  Mitchco further claims that KOVR and Southern do not have a signed written contract, leaving Southern with the ability to walk away from the work.

These allegations are without any factual support in the record. Plaintiff's bald assertions are based upon an alleged conversation between employees of Southern and Mitchco. Mitchco provides no supporting details or competent evidence to substantiate its argument that KOVR proposed the cook would clean restrooms, or that KOVR's proposal ignores the collective bargaining agreement. As to whether Southern has a signed contract with KOVR, the solicitation did not require one.

In sum, Mitchco has misfired badly on all of its merits assertions of procurement law violations.

B.     Irreparable Harm

The factor of irreparable harm is also lacking here. When considering irreparable harm, "the relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction." *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993). This court takes judicial notice of the Franklin Circuit Court order, which granted Mitchco a permanent injunction requiring Kentucky to award the Fort Knox procurement to Mitchco in accordance with a prior contract between Mitchco and Kentucky. By obtaining an injunction from the state court, plaintiff has effectively nullified any assertion of irreparable harm here. Although Mitchco is not the awardee, if the state injunction stands, it is still the sub-contractor that will perform the work. Mitchco explains the value of its loss in its motion: "although Mitchco currently is performing the food services subcontract under the Contract, per Kentucky court order, Mitchco's proposed price is slightly (less than 2%) higher than [Kentucky's] . . . proposed price" and absent injunctive relief in this action, Mitchco has no claim against the U.S. Government for the difference. Pls.' Mot. for Judgment on the Admin. Rec. and Permanent Injunction (ECF 31 at 44). In other words, under the state court order, Mitchco will retain more than 98% of the value of the work even in the absence of an injunction from this court. The difference in the value of serving as the prime contractor versus the subcontractor does not rise to the level of an irreparable injury.

As additional arguments, Mitchco also complains that it suffers loss by being required to make R-SA payments to the "blind vendor" under the Contract that Mitchco would not be making if it were the prime contractor.

Mitchco also alleges that it faces the threat of removal, notwithstanding the Kentucky court order, which is not a threat that Mitchco would be facing if Mitchco were the prime contractor.  Neither of these are persuasive.

Mitchco's allegation regarding the harm caused by making R-SA payments to the blind vendor is unquantified, and it does not explain how this is worse than its cost of labor as the prime contractor.  Even presuming a difference of some small percentage, the harm would be far from irreparable.  We also find that the fear of losing the subcontract is not an irreparable harm.  The fear in and of itself is not irreparable as it is entirely speculative whether the underlying injury would ever befall plaintiff.  As the Supreme Court cautioned, "issuing a[n] . . . injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Plaintiff's reliance on *United Payors & United Providers Health Servs., Inc. v. United States*, 55 Fed. Cl. 323 (2003), is unavailing.  *United* involved a plaintiff which lost the contract award entirely; its only relief would be "the recoupment of its bid and proposal costs" on a five-year contract.  *Id.* at 333.  Such relief would not have adequately compensated that plaintiff's lost profits.  Thus, the court found that "[t]his type of loss, deriving from a lost opportunity to compete on a level playing field for a contract, has been found sufficient to prove irreparable harm."  *Id.*  The loss here was insufficient to show irreparable harm because Mitchco has virtually 100% of the benefit of the contract award as subcontractor and the value between its profits as the prime contractor versus the subcontractor does not rise to the level of irreparable harm.

Plaintiff has shown neither success on the merits nor that it will suffer an irreparable injury absent the sought injunction.  We thus need not consider the other factors.  No relief is warranted.

CONCLUSION

The allegations levied and the arguments made are wholly without support in the record and the law, and they were brought by an offeror who represents that it will be performing the work no matter the outcome of this suit.   Plaintiff's motion for judgment on the record and a permanent injunction is denied.   Defendant's and intervenors' cross-motions are granted.  The Clerk of Court is directed to enter judgment for defendant.  No costs.


s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge